**STATE of Minnesota, Respondent,**

v.

**Fabian Maurice HENDERSON, Appellant.**

**No. CX–86–181.**

Court of Appeals of Minnesota.

Oct. 21, 1986.

Review Denied Dec. 17, 1986.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, Thomas L. Johnson, Hennepin Co. Atty., Beverly J. Wolfe, Asst. Co. Atty., Minneapolis, for respondent.

C. Paul Jones, Public Defender, Lawrence Hammerling, Asst. Public Defender, Minneapolis, for appellant.

Considered and decided by PARKER, P.J., and FORSBERG and LESLIE, JJ., with oral argument waived.

## OPINION

PARKER, Judge.

Fabian Henderson was charged with and subsequently convicted of two counts of first-degree burglary. One count alleged burglary with a weapon, and the other count alleged burglary of a dwelling with a person present. At sentencing the trial court ruled that the facts and circumstances of this case warranted classification of first-degree burglary as a crime against a person. Because Henderson is presently serving a felony sentence for a crime against a person, the trial court ordered a consecutive sentence pursuant to the Minnesota Sentencing Guidelines. We affirm.

## FACTS

On November 29, 1984, a black man and a white man broke into 65-year-old Norma Leinum's home. The men kicked down the door, breaking a deadbolt and snap lock and completely destroying the door casing and molding. They were armed with guns and knives and carried a roll of laundry rope and duct tape. Leinum was ordered to the floor by the black man, who held a knife in one hand and a gun in the other. Although Leinum told the man she was ill and had wet her pants, the man again ordered her to the floor. The arrival of Leinum's daughter-in-law and grandchildren caused the men to flee.

On December 7, 1985, Fabian Henderson, a black man, and Thomas Quigley, a white man, were arrested in connection with the Leinum burglary. Henderson was charged with two counts of first-degree burglary in violation of Minn.Stat. § 609.582, subd. 1(a) and (b) (1984). A jury trial was held, and Henderson was convicted of both counts of burglary. At sentencing the trial court determined that the commission of burglary in this case constituted a crime against a person. Because Henderson was serving a sentence for a prior crime against a person, the court ordered a 36-month consecutive sentence pursuant to the Minnesota Sentencing Guidelines.

Leinum testified during Henderson's trial but was unable to identify either of the men who burglarized her home. Leinum did state that a gun found in Quigley's car and introduced into evidence was similar to the gun she saw in November.

Michelle Kirsch, age 16, testified that she drove Henderson and Quigley to Leinum's home on November 29, 1984. According to Kirsch, Leinum's home was selected because Quigley thought an elderly lady lived there alone. Kirsch said Henderson and Quigley wore ski masks with facial perforations and carried what she thought was a .38 BB gun, a filet knife, a roll of duct tape, and a roll of thin rope. Kirsch recognized one of the guns and one of the knives introduced at trial as similar to the ones used on the night in question.

Jeff Willis, a boyfriend of Henderson's sister, testified that Henderson told him of a robbery where "he [Henderson] made a lady pee on herself." Willis was present at the time of Henderson's arrest but was not charged.

*Spreigl* evidence was introduced of Henderson's conviction and sentence for burglarizing the home of Mary Binder, an elderly woman living alone in the vicinity of Leinum's home. On December 4, 1984, Binder said her home was burglarized by a black man and a white man. The burglars broke down her door, wore ski masks, and were armed with guns and knives. Binder's sister, who was present at the time of the burglary, identified Henderson in a photo lineup as one of the perpetrators.

Officers investigating the Leinum burglary testified that Leinum's door casing was completely splintered and that the deadbolt and snap locks, which had been engaged, were demolished. They also found a small roll of twine or laundry rope and a roll of duct tape in the yard. Pursuant to a

search warrant, police officers searched Quigley's car and found a filet knife, some cord and a roll of duct tape. A Bureau of Criminal Apprehension analysis revealed the cord possibly was the same as that left in Leinum's yard.

## ISSUES

1. Was the evidence corroborating an accomplice's testimony sufficient to sustain the conviction?

2. Did the trial court err in classifying this first-degree burglary as a crime against a person for purposes of consecutive sentencing?

## DISCUSSION

### I

In reviewing the sufficiency of corroborative evidence, this court must examine the evidence in the light most favorable to the State. *State v. Adams*, 295 N.W.2d 527, 533 (Minn.1980). Several factors contained in the record sufficiently corroborate Michelle Kirsch's testimony. Duct tape found in Quigley's car possibly matched that left in Leinum's yard. Willis' testimony indicates that Henderson told him of circumstances surrounding the crime that only a participant would know. Henderson was arrested in the vicinity of the crime and acted suspiciously upon arrest. Finally, introduction of *Spreigl* evidence strongly suggests that the Binder and Leinum burglaries were committed by the same parties.

An accomplice's testimony need not be corroborated on every point. *See* Minn. Stat. § 634.04; *State v. Lyons*, 144 Minn. 348, 354, 175 N.W. 689, 692 (1919). The corroboration need only instill confidence in the accomplice's testimony, confirming its truth and pointing to the suspect's guilt in some substantial degree. *State v. Houle*, 257 N.W.2d 320, 324 (Minn.1977). The record reflects that the trial court ruled correctly in finding sufficient corroborating evidence to sustain Henderson's conviction.

### II

Minnesota Sentencing Guideline II.F limits imposition of consecutive sentences:

Consecutive sentences may be given only in the following cases:

1. When a felony sentence for a crime against a person has not yet expired or been discharged and one or more of the current felony convictions is for a crime against a person * * *.

Henderson is presently serving a felony sentence for a crime against a person. Hence, the propriety of consecutive sentencing requires a determination of whether the present felony conviction is a crime against a person.

The phrase "crime against a person" is not defined in the Minnesota Sentencing Guidelines. However, burglary has been interpreted as a person offense, although it is listed under property offenses in the criminal code. In *State v. Nunn*, 297 N.W.2d 752 (Minn.1980), the supreme court closely examined the issue of whether burglary was a person or a property offense. For purposes of conviction under the felony murder rule, the *Nunn* court held that burglary was a person offense.

The *Nunn* court recognized that two approaches were available in reaching its conclusion. One involved analyzing the felony in the abstract to determine whether it inherently encompasses some special danger to life. The second involves examining the facts and circumstances of the particular case to determine whether the felony murder rule should apply. The *Nunn* court specifically rejected the first approach, choosing to rely instead on the situational approach. *Nunn*, 297 N.W.2d at 754.

Although *Nunn* involves application of the felony murder rule, the supreme court there indicated that certain burglarious situations necessitate classifying burglary as a person offense:

[B]urglary of a dwelling * * * should not be deemed a purely property offense because * * * such an offense always carries with it the possibility of violence and therefore some special risks to human life.

*Nunn,* 297 N.W.2d at 754. The facts of the present case suggest the reasoning of *Nunn* is applicable for purposes of consecutive sentencing under the guidelines. Both *Nunn* and the present case involve treatment of first-degree burglary as a person offense for purposes of increasing the severity of the penalty.

As in *Nunn,* the present case involves a burglary imbued with violence. Although the door was securely locked, the burglars proceeded to kick it open, demolishing the locks and splintering the door frame. Their brandishing a gun and knife caused the 65–year-old Leinum to become so afraid that she felt ill and fouled herself. As evidenced by the Binder burglary, Henderson and his partner employed this modus operandi to attack the very vulnerable elderly. The first-degree burglary offense, as committed in this case, involved a special danger to human life.

Thus, we hold the trial court did not err in ruling that, for purposes of consecutive sentencing under the guidelines, first-degree burglary may, depending on the facts, be treated as a predicate crime against a person.

## DECISION

The trial court's conviction and imposition of a consecutive sentence is affirmed.

Affirmed.